SIMPSON v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, Second Department. November 23, 1910.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—DISMISSAL OF ACTION.

Where a complaint was on defendant's motion dismissed at the close of plaintiff's case, plaintiff on appeal was entitled to the most favorable construction which the jury might properly have placed on the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3748, 4024; Dec. Dig. § 927.*]

2. MASTER AND SERVANT (§§ 286, 289*)—INJURIES TO SERVANT—QUESTIONS FOR JURY.

Labor Law (Consol. Laws, c. 31, former Employer's Liability Law) § 202, provides that, in a personal injury action, that the employé continues in service after discovering the danger shall not, as matter of law, be considered an assent to the continuance of risks of personal injury, or as negligence contributing to such injury, but the questions of assumption of risk and of contributory negligence shall be questions of fact, subject to the power of the court to set aside a verdict contrary to the evidence. Held, that in a servant's action for injuries, where there was some evidence of defendant's negligence, the questions of negligence and contributory negligence were for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1089, 1096; Dec. Dig. §§ 286, 289.*]

Jenks and Burr, JJ., dissenting.

Appeal from Trial Term, Queens County.

Action by Florence M. Simpson, as administratrix, etc., of John Simpson, deceased, against the Interborough Rapid Transit Company. Judgment for defendant, and plaintiff appeals. Reversed, and new trial granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before WOODWARD, JENKS, BURR, THOMAS, and CARR, JJ.

Rufus O. Catlin, for appellant.

L. E. Quigg (Bayard H. Ames and John Montgomery, on the brief), for respondent.

WOODWARD, J. The complaint was dismissed on motion of the defendant at the close of plaintiff's case, and under the well-established rule of this court she is entitled on appeal to the most favorable construction which the jury might properly have placed upon the evidence. There appears to be no question here that the action was properly brought under the provisions of chapter 600 of the Laws of 1902 (now a part of the labor law [Consol. Laws, c. 31]), which provides (section 200, Labor Law) that when—

"personal injury is caused to an employé who is himself in the exercise of due care and diligence at the time: (1) By reason of any defect in the condition of the ways, works or machinery connected with or used in the business of the employer which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and intrusted by him with the duty of seeing that the ways, works or machinery were in proper condition, * * * the employé, or in case the injury results in death, the executor or administrator of a deceased employé, * * * shall have the same right of compensation and remedies against the employer as if the employé had not been an employé of nor in the service of the employer nor engaged in his work."

This language is broad and comprehensive. "Ways, works or machinery" is very inclusive, and the employer is made liable to an action as though the employé was not such employé, if there is "any defect in the condition" of such "ways, works or machinery." The plaintiff's intestate was employed by the defendant as a telephone lineman or electric wireman. He was engaged in doing some painting at a point where he and one of the witnesses had made certain repairs in the telephone wires maintained by the defendant upon its elevated railroad structure, when his forehead came in contact with a high-voltage feed wire for its third-rail system of elevated railway operation, and he dropped to the ground below, and soon afterward died of his injuries.

The evidence shows that the accident occurred near 156th street, on Third avenue, and in close proximity to one of the defendant's stations. The defendant had a double-track line at this point, with the station between the tracks, and a passageway was constructed under the tracks to reach the station. The tracks were placed upon steel girders, resting upon steel pillars. These girders were about four feet high, with flanges at the top and bottom, about six inches wide, and the defendant had placed a telephone cable just beneath the top flange on the outside of the girder, and it was necessary, as the evidence shows, to make repairs upon this wire from time to time. Plaintiff's intestate, as was the practice, was called upon to make repairs and to paint over the place, and in doing this he stood upon the outside flange and held himself in position by a safety belt and life line attached to the girder. On the day of the accident he had been thus located, and after completing the painting which he was engaged in

he handed his paint pail to his companion and started to unfasten his safety belt. In some manner the belt did not unfasten readily, and the deceased placed his arm over the messenger wire (a supporting wire to hold the cable) and proceeded to unfasten the same. While thus employed he appears to have raised his head and thrown it backward somewhat, and his forehead came in contact with the naked high-voltage feed wire, shocking him and producing a fall, and the accident resulted in his death.

It appears that this feed wire extends for a long distance, and is carried at the stations under a narrow walk provided for the use of employés; that the wire, where it is in the open, is covered with an insulating substance of some kind, but where it is placed under these walks it is left naked. In so far as this relates to those employés who use the walk, it is entirely safe; but the case is differently presented when it comes to those who are called upon to make repairs upon the telephone wires. This high-voltage feed wire, at the point of the accident, was under this walk, which extended out over the girder on which the plaintiff's intestate was at work, and which compelled him to do his work in a stooping position. This naked wire, as to the plaintiff's intestate, was only a few inches from his head while he was at work, and when he straightened up, for the purpose of getting himself free from his safety-belt fastening, he came in contact with it, and I am of the opinion that the jury might have found that there was a defect in the "ways" provided for the plaintiff's intestate; or, in the phraseology of the common law, there was a question whether the master had performed the duty of providing a reasonably safe place in which to perform the service.

It is not enough that the master shall provide a reasonably safe place for some of his laborers. That is a duty which he owes to each and every individual in his employ, and section 202 of the labor law specially provides that an—

"employé by entering upon or continuing in the service of the employer shall be presumed to have assented to the necessary risks of the occupation or employment and no others. The necessary risks of the occupation or employment shall, in all cases arising after this article takes effect, be considered as including those risks, and those only, inherent in the nature of the business which remain after the employer has exercised due care in providing for the safety of his employés, and has complied with all laws affecting or regulating such business or occupation for the greater safety of such employés."

Obviously the business or occupation of a telephone lineman does not require the presence of a high-voltage feed wire for an elevated railroad, nor is it reasonable to expect that an employé will be asked to work in the immediate presence of an exposed wire of this character. There is nothing in the evidence in this case which tends to show that it is not entirely practicable to protect these high-voltage wires with an insulating substance. The evidence discloses that this is done where such wires are exposed, and a jury might very properly find that failure to thus cover them at the point where the plaintiff was called upon to perform his work was a failure to discharge the duty of providing proper "ways" for him. Indeed, it is practically conceded, by my learned Associates who desire the affirmance of

this judgment, that there was a question for the jury in respect to the defendant's negligence; but they urge that plaintiff's intestate was guilty of contributory negligence as matter of law, in that he knew of the presence of this high-voltage wire, and that he knew the danger to which he was exposed.

If this were strictly a common-law action for negligence, we might, perhaps, hold that these circumstances precluded a recovery; but section 202 of the labor law (former employer's liability law) provides that:

"In an action maintained for the recovery of damages for personal injuries * * * the fact that the employé continued in the service of the employer in the same place and course of employment after the discovery by such employé, or after he had been informed of, the danger of personal injury therefrom, shall not, as a matter of law, be considered as an assent by such employé to the existence or continuance of such risks of personal injury therefrom, or as negligence contributing to such injury. The question whether the employé understood and assumed the risk of such injury, or was guilty of contributory negligence, by his continuance in the same place and course of employment with knowledge of the risk of injury, shall be one of fact, subject to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence."

We are not to determine the question of assumption of risks or contributory negligence as matter of law in this class of actions. The facts and circumstances must be submitted to the jury, and if the evidence is not such as to warrant the verdict, the trial court, or this court on appeal, may set aside the verdict. That is the extent of the power of the court upon this branch of the case as defined by the employer's liability act. If the defendant's negligence is shown by the evidence, the case must go to the jury on the questions of assumption of risks and contributory negligence, and the court may set the verdict aside, if it is contrary to the evidence or the law, as in other cases; and as it is practically admitted that there was a question for the jury on defendant's negligence, it follows that it was error for the learned court at Trial Term to dismiss the complaint.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event.

THOMAS and CARR, JJ., concur. JENKS and BURR, JJ., dissent.